[Civ. No. 23788. Third Dist. Aug. 6, 1985.]

JAMES HOLT et al., Plaintiffs and Appellants, v.
DEPARTMENT OF FOOD AND AGRICULTURE,
Defendant and Respondent.

**COUNSEL**

Leonard Herr, Randall J. Bunn, Richard C. Conway and Kahn, Soares & Conway for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, and Robert L. Mukai, Deputy Attorney General, for Defendant and Respondent.

OPINION

**SPARKS, J.**—James Holt and the Sutter Butte Dusters, Inc., appeal from a judgment of the Superior Court of Sutter County denying their petition for an administrative writ of mandate directing the Department of Food and Agriculture to set aside its decision imposing discipline upon them. Plaintiffs contend: (1) the statutory and regulatory bases for discipline are unconstitutionally vague; (2) the administrative proceeding was barred by a prior criminal acquittal of Holt; (3) the evidence does not support the judgment; and (4) the penalty imposed was an abuse of discretion. We find the arguments unpersuasive and shall affirm.

FACTS

This proceeding resulted from an incident which occurred on the morning of May 15, 1980. At that time Holt was an employee of Sutter Butte Dusters, Inc., and he held a certificate entitling him to engage in the aerial application of pesticides. On May 15, 1980, Holt was assigned to apply parathion to a rice field belonging to Sam Anderson. Holt had flown that particular field many times so the only surveillance he made was a visual inspection as he approached the field to commence the application.

On the morning in question, three county workers were working in the vicinity of the Anderson rice field. They were cleaning brush and vegetation from the sides of the Live Oaks Canal and were in the process of burning the debris with diesel oil. Their fire was located approximately 187 feet from the Anderson rice field. After Holt made his first pass over the rice field he flew over the workers. All three workers reported being hit by parathion spray from Holt's aircraft. Holt made several more passes over the field, and the workers reported that mist from the spraying made contact with them during these passes. The spray felt oily, and the workers were covered by a sufficient amount that they could feel it wipe off on their hands. At least two of the workers reported suffering symptoms consistent with parathion poisoning.

Based upon this incident Holt was criminally charged with a violation of Food and Agricultural Code section 11791, subdivision (b), a misdemeanor. That section provides that it is unlawful for a crop duster to operate in a faulty, careless, or negligent manner. The jury returned a not guilty verdict. Thereafter an administrative accusation was filed on January 13, 1982, before the Director of the Department of Food and Agriculture. The accusation jointly charged Holt and Sutter Butte with misconduct arising out of the May 15, 1980, incident. Count I alleged that Holt violated Food and Agricultural Code section 11791, subdivision (c), and California Adminis-

trative Code, title 3, section 3093, subdivisions (a) and (b). Count II alleged that Holt violated Food and Agricultural Code section 11791, subdivision (b), and California Administrative Code, title 3, section 3091, subdivisions (d) and (i). Count III charged Sutter Butte with the same violations alleged against Holt in count I and asserted that it was subject to discipline because it was responsible for any violation committed by its employee acting within the course and scope of his employment. Count IV charged Sutter Butte with the same violation as count II against Holt. The basis of that charge was that Sutter Butte acted negligently because it took insufficient preapplication precautions, failed to instruct its pilots properly and failed to establish safe procedures. The matter was heard by an administrative law judge, who prepared a proposed decision which was adopted by the director. The director found that all the charges were true, that both Holt and Sutter Butte were subject to discipline, that Holt's certification should be suspended for 15 days, and that Sutter Butte's license should be suspended for 10 days.

Holt and Sutter Butte petitioned for a writ of administrative mandate. The trial court found that the director had failed to make findings resolving the contention of unreasonable delay in filing the accusation, and remanded to the director with directions to make appropriate findings. The director issued a new decision incorporating findings on the question of delay, and otherwise adhering to the prior decision. Holt and Sutter Butte filed a second petition for a writ of administrative mandate. The trial court denied the petition, and Holt and Sutter Butte appeal.

## DISCUSSION

### I

Food and Agricultural Code section 11791 provides, in relevant part, that it is unlawful for a pest control operator to: "(b) Operate in a faulty, careless, or negligent manner.

"(c) Refuse or neglect to comply with any provision of this division, or any regulation issued pursuant to it, or any lawful order of the commissioner."

At the time in question, title 3 of the California Administrative Code, section 3091 provided in relevant part that persons performing pest control operations shall "(d) Perform all pest control work in a safe, good and workmanlike manner." and "(i) Exercise reasonable precaution to avoid contamination of the environment." Section 3093 of that title provided in relevant part that no pesticide was to be applied under circumstances in which "(a) When the pesticide will not be substantially confined to the area

to be treated; [¶] (b) Persons not involved in the application process are within the area to be treated or are so nearby that there is a hazard of drift of the pesticide onto them."

█ Plaintiffs contend that these statutory and regulatory requirements are unconstitutionally vague. They rely upon this court's decision in *Wheeler* v. *State Bd. of Forestry* (1983) 144 Cal.App.3d 522 [192 Cal.Rptr. 693]. There a registered professional forester was disciplined for "gross incompetence." We noted that competence has to do with ability, qualifications and fitness to perform a prescribed duty. The record, however, contained no statute, rule, regulation, or implied standard by which to measure competence and thus failed to provide what is prescribed. Under such circumstances we found no ascertainable standard of conduct and held that the board could not rely upon "gross incompetence" as a basis for discipline. (144 Cal.App.3d at pp. 527-528.)

Plaintiffs contend that this case is controlled by the *Wheeler* decision. We disagree. Here, unlike *Wheeler,* the statutes and regulations provide sufficiently clear standards to give fair notice of the proscribed conduct. We have twice so held when we considered and rejected the identical contention made by appellants here. In *Wingfield* v. *Fielder* (1972) 29 Cal.App.3d 209 [105 Cal.Rptr. 619], the contention was made that the phrases "faulty, careless or negligent manner," "circumstances where injury is likely to result to plants . . . through drift," and "reasonable precautions . . . to confine the material applied substantially" to the intended area, were unconstitutionally vague. (*Id.,* at pp. 216-217.) We rejected the contention, stating: "The operator is given sufficiently definite notice as to the proscribed conduct when measured by common understanding and practice and in the light of the potential for harm involved in the use of pesticides by aerial application." (29 Cal.App.3d at p. 220.) The standards were "not at all vague but are sufficiently definite and certain to anyone associated with crop dusting or spraying by air." (*Ibid.*)

Ten years after the decision in *Wingfield,* the contention was made again. In *Medlock Dusters, Inc.* v. *Dooley* (1982) 129 Cal.App.3d 496 [181 Cal.Rptr. 80], the plaintiff recognized our decision in *Wingfield,* but contended that a change in the regulatory language left the department's regulations unconstitutionally vague. The language at issue included the terms "*hazard* of drift," "*reasonable* possibility of damage by drift," and "*substantially* confined to the area to be treated." We again rejected the contention, stating: "In this case the purpose of the statute and the regulation is clear, to protect against damage to persons, animals, crops, and property through aerial application of pesticides. In view of this legislative purpose

we hold, as we held in *Wingfield* v. *Fielder,* that the statute and regulation are not void for vagueness." (129 Cal.App.3d at p. 501.)

The argument raised by the plaintiffs here is identical to the arguments we rejected in *Wingfield* and *Medlock Dusters.* Those decisions are controlling here and we therefore reject plaintiffs' argument.

## II

■    Plaintiffs contend that the acquittal of Holt in the prior criminal proceedings should bar the administrative proceedings through the application of the doctrine on res judicata. Once again, we disagree. The rule is well established otherwise. (*In re Coughlin* (1976) 16 Cal.3d 52, 58 [127 Cal.Rptr. 337, 545 P.2d 249]; *Lofthouse* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 730, 736-737 [177 Cal.Rptr. 601].) Although *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321], held that an administrative decision could be accorded collateral estoppel effect in a subsequent criminal prosecution, that effect cannot conversely be accorded in an administrative hearing. In a criminal case the burden of proof is higher and different and consequently the issue decided in the criminal proceeding is not identical to the one to be litigated in the subsequent administrative hearing. The reason that an administrative adjudication may be given collateral estoppel effect in a subsequent criminal action, even though the standards of proof remain different, is because if the administrative agency "fails to prove its allegations by a preponderance of the evidence at the [administrative] hearing, it follows a fortiori that it has not satisfied the beyond a reasonable doubt standard." (*Id.,* at p. 485.) Since the converse is not true, the doctrine of res judicata does not apply.

## III

■    Plaintiffs contend the evidence does not support the decision. This is an appropriate case for the exercise of the trial court's independent judgment on the evidence and the trial court specifically applied that test. (*Wingfield* v. *Fielder, supra,* 29 Cal.App.3d at 212.) The appropriate scope of review on appeal is the substantial evidence test. (*Ibid.*)

The trial court found that on the morning in question Holt sprayed parathion beyond the boundaries of the Anderson rice field and onto the three county workers, who were 187 feet outside the field. The administrative decision, approved by the trial court, found Holt operated in a faulty, careless, negligent and unsafe manner "by reason of his failure to substantially contain the Parathion within the rice field caused by his failure to shut off the spraying device at or before the boundary of the field in order to contain

the spray within the boundaries of the field." Plaintiffs contend that the evidence is not sufficient to support the finding that Holt sprayed beyond the confines of the field.

Initially, we note that the evidence is overwhelming in support of the finding that the three county workers were hit with spray from Holt's aircraft. All three workers so testified. In addition one of the workers, Mr. Terry, had experience in the application of parathion and he recognized the feel and scent of the pesticide when he was sprayed. Two of the workers reported suffering from symptoms of parathion poisoning shortly after the incident. The amount of spray that contacted the workers was sufficient in quantity that they could feel it rub off their faces and onto their hands. This evidence supports the finding that the workers were hit with the spray.

Plaintiffs take issue with the finding that Holt "sprayed" the parathion beyond the boundaries of the field, and they assert the spray could have been drift. One of the workers, Mr. Inay, signed a declaration after the incident in which he stated that he was hit by direct spray once and by drift three times while Holt sprayed the field. At the administrative hearing Inay had difficulty communicating his perceptions. He testified that the spray was shut off as the airplane began to climb, which was closer to the workers than to the edge of the field. But he was confused as to the exact point the spray was shut off. The other workers testified that the spray hit them as the airplane passed over them, but could not precisely state when the spray was shut off. Plaintiffs argue that this testimony cannot support a finding that Holt sprayed beyond the boundaries of the field. We disagree. When the workers observed the airplane coming at them at a low altitude spraying a pesticide they perceived it as a danger to themselves and took evasive action. It is not surprising that they could not specifically recall the precise point the spray was shut off. But the fact that the spray made contact with them at the instant the airplane passed them supports a finding that the spray was not turned off at the field's border 187 feet away.

In any event, the basis for discipline was not dependent upon a finding that Holt continued spraying after he passed the border of the rice field. Discipline was imposed because he failed to confine the spray to the field by failing to shut off the spray at or before the field's boundary. There was expert testimony that in order to prevent an aerial application of pesticide from affecting areas substantially outside the field of application a pilot should shut off his spray *before* reaching the edge of the field. One of plaintiffs' experts estimated he would shut off the spray approximately 50 feet before the edge of the field. Another expert testified the spray should be shut off one or two spray widths from the edge. In view of the evidence that the three workers were hit with substantial spray at a distance of 187

feet from the edge of the field, the finding that Holt failed to substantially confine the spray to the field by shutting it off at an appropriate time is supported by the evidence.

Holt was also found to have acted in a faulty, careless, and negligent manner by failing to adequately survey the rice field and surrounding areas before applying the parathion. The administrative decision noted that plaintiffs "established that the usual custom and practice among agricultural pilots in this area, when making an aerial application of a commercial pesticide onto a field which such pilots have sprayed previously and which is some distance from human habitation, did not involve flying around the perimeter of the field to determine whether any persons were in or near the field. It was established that the usual custom and practice was to simply look over the field from the air as the pilot approached the field prior to the first application of the spray. It was also established that the custom and practice of the agricultural pilots in the area did not involve flying the perimeter of the field to be sprayed even with the presence of automobiles or fires near the rice fields. It was established that respondent Holt's conduct on this occasion was consistent with the custom and practice of most agricultural pilots in the area. However, it is also found that the custom and practice set forth hereinabove is inconsistent with ordinary standards of due care. It is noted in this regard that it was established that the time required to fly the perimeter of the field here in issue would have been approximately one to one and one-half minutes."

Holt's testimony was consistent with this finding. He explained that he has flown the Anderson rice field many times and so when he approaches it the only survey he makes is on his approach for his first application of pesticide. The pesticide is applied at an extremely low altitude and the approach is also made while dropping altitude. On such an approach a pilot would not necessarily be able to see whether any persons were in the vicinity of the field. It appeared the pilot's major concern would be potential hazards to the pilot. Plaintiffs contend that since this practice conforms to that of most agricultural pilots, it cannot be a basis for discipline.

We reject this contention.     ■     Evidence of the custom or general practice in the same trade or occupation is relevant but not conclusive on the question whether the actor utilized due care. (*Reagh* v. *S.F. Unified School District* (1953) 119 Cal.App.2d 65, 70 [259 P.2d 43].) Conformity with the general practice or custom will not excuse conduct which is not consistent with due care. (*Ibid.;* see also *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 809 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].)   ■ "When human life is at stake the rule of due care and diligence requires that without regard to difficulties or expense every precaution be taken rea-

sonably to assure the safety and security of any person lawfully coming into the immediate proximity of the dangerous agency or device which is a peril to others." (*Been* v. *The Lummus Co.* (1946) 76 Cal.App.2d 288, 293 [173 P.2d 34], citations omitted.) The care to be exercised must be in proportion to the danger to be avoided and the consequences which might follow. (*Warner* v. *Santa Catalina Island Co.* (1955) 44 Cal.2d 310, 317 [282 P.2d 12].) The standard of care required in dealing with dangerous articles or fluids is so great that a slight deviation therefrom will constitute negligence. (*Ibid.*)

■■■ The uncontroverted evidence established that parathion is an extremely potent poison which can be fatal to human beings in small dosages. The range between doses which will cause a reaction and which will be fatal is very narrow. Parathion is a restricted use chemical. It is on the order of 200 times more potent than the commercially sold malathion. Under such circumstances, and with the established potential for drift of an aerially applied pesticide, a high degree of care must be demanded in such applications to insure that persons lawfully on adjoining property are not exposed to the pesticide. Holt made his application without sufficient surveillance of the rice field to determine whether persons were in the area and thus in danger. Regardless of how many agricultural pilots would do the same thing, this did not conform to the standard of care required in handling such a dangerous material.

Sutter Butte was found to be subject to discipline for its failure to take preapplication precautions in the application of parathion, and for failing to instruct its pilots in the necessity for preapplication precautions. It is uncontroverted that Sutter Butte did not instruct Holt in the safeguards he should follow in applying parathion. Sutter Butte contends that the finding against it is unsupported for the same reasons Holt raises. For the same reasons we reject this contention. Moreover, the duty to operate safely in the aerial application of pesticides is nondelegable and Sutter Butte is responsible for the failure of its employee to operate in a safe manner. (*Camacho* v. *Youde* (1979) 95 Cal.App.3d 161, 164-165 [157 Cal.Rptr. 26].)

IV

■■■ Plaintiffs finally contend that the sanctions imposed by the director amount to an abuse of discretion. It will be remembered Holt's privilege to act as an agricultural pilot was to be suspended for 15 days, and Sutter Butte's license was to be suspended for 10 days.

The general rule is that the propriety of a penalty imposed by an administrative agency is a matter of discretion and its decision will not be disturbed unless there is a clear abuse of discretion. (*Wingfield* v. *Fielder,*

*supra,* 29 Cal.App.3d at p. 221.) The agency's decision will be regarded as an abuse of discretion only if it is not one which could have been made by a reasonable person. (*Ibid.*) Plaintiffs insist, without acknowledging their right to petition the director to be allowed to pay a monetary fine in lieu of their suspensions (Food & Agr. Code, § 11514), that their suspensions will put them out of business. In view of the serious potential for disastrous results from human contact with parathion, and plaintiffs' insistence that they need only exercise minimal care, the decision of the agency cannot be regarded as a clear abuse of discretion.

The judgment is affirmed.

Carr, Acting P. J., and Sims, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 30, 1985.