Filed 11/9/22  Doe v. USA Swimming CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JANE DOE, a Minor, etc., | C091417 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. STK-CV-UPI-2019-0004973) |
| USA SWIMMING, INC., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed in this case on October 13, 2022, be modified as follows:

On page 10, first full paragraph, after the last sentence beginning with "As we have explained," insert the following footnote:

Doe argued in a petition for rehearing that we must reverse because Doe objected to the general duty of care instruction in her motion for new trial.  She asserted that the trial court had a duty to give a complete and comprehensive instruction on USA Swimming's duty to Doe based on a special relationship because Doe objected to the general duty of care instruction.  If this court were to accept that argument, it would mean a plaintiff in a

1

civil case who lost in the trial court could prevail on appeal by asserting that the trial court gave an incomplete jury instruction to which the plaintiff objected even though the plaintiff did not proffer a correct and complete instruction on the plaintiff's theory of the case. That is not the law. As noted, to obtain reversal based on the trial court's failure to instruct the jury on the plaintiff's theory of the case, the plaintiff must have proposed "complete and comprehensive instructions in accordance with [that party's] theory of the litigation . . . ." (Agarwal v. Johnson (1979) 25 Cal.3d 932, 950-951.) In addition, although Doe suggested in her petition for rehearing that the general duty of care instruction (CACI No. 401) was "incorrect," the instruction correctly stated the general duty of care. "Negligence is the failure to use reasonable care to prevent harm to oneself or to others. . . ." (CACI No. 401.) Because Doe did not propose an appropriate, complete and comprehensive instruction reflecting her theory of the case, Doe's objection to the general duty of care instruction did not preserve for appeal the assertion that a different instruction should have been given.

This modification does not change the judgment.

The petition for rehearing is denied.

FOR THE COURT:


_____/S/_____
MAURO, Acting P. J.



_____/S/_____
HOCH, J.



_____/S/_____
EARL, J.

2

Filed 10/13/22  Doe v. USA Swimming CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JANE DOE, a Minor, etc., | |
| Plaintiff and Appellant, | C091417 |
| v. | (Super. Ct. No. STK-CV-UPI-2019-0004973) |
| USA SWIMMING, INC., | |
| Defendant and Respondent. | |

After a swimming coach repeatedly abused a minor athlete, Jane Doe, the minor sued the coach, the local swim club, and USA Swimming, Inc., the national governing body (NGB) for swimming competition in the United States.  The lawsuit alleged, among other things, that USA Swimming was negligent in failing to take reasonable measures to protect the minor from sexual abuse by the coach.  At trial, there was evidence USA Swimming had an abuse-prevention program called SafeSport, but that USA Swimming did not require minor athletes and their parents to be trained on the risk of sexual abuse.

1

Doe requested the following jury instruction regarding USA Swimming's duty of care: "USA Swimming had a duty of care to take reasonable measures to protect Plaintiff Doe from the risk of sexual abuse by USA Swimming coaches, such as training or educating Plaintiff Doe and her parents about how to avoid such a risk." The trial court denied the requested instruction and instead used the general negligence duty of care instruction.

The jury found that USA Swimming was not negligent, and Doe appeals. USA Swimming is the only respondent in this appeal. Doe contends the trial court improperly denied the requested special instruction on duty.

Doe's proposed instruction correctly explained that USA Swimming had a duty to take reasonable measures to protect Doe from sexual abuse by USA Swimming coaches. This is so because USA Swimming had a special relationship with both the minor athlete and the coach, and the parties do not argue that the *Rowland* factors identify policy considerations that should limit the duty. (*Brown v. USA Taekwondo* (2019) 40 Cal.App.5th 1077, 1094-1101 (*Brown I*); *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209, 216 (*Brown II*); *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*).) But the remainder of Doe's special instruction was too specific, proposing to instruct the jury that examples of reasonable measures included training or educating Doe and her parents about how to avoid such abuse. The trial court did not err in declining Doe's proposed instruction.

The trial court also instructed the jury that it could "consider customs or practices in the community in deciding whether USA Swimming acted reasonably." (CACI No. 413.) Doe contends it was error to give that instruction, but again, Doe has not established instructional error.

We will affirm the judgment.

2

BACKGROUND

We independently review claims of instructional error. In doing so, we view the evidence in the light most favorable to the appellant, in this case Doe. (*Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 674.)

A

USA Swimming is the national organization responsible for Olympic trials, national events, and service to local swim clubs. Such service includes the establishment of rules, a code of conduct, and best practices; it also includes guidance on how to grow the sport and the teams. USA Swimming provides clinics and camps for coaches and athletes, education to coaches, and team training. About 3,200 member clubs are associated with USA Swimming, but USA Swimming is not responsible for day-to-day operation of the clubs. Hundreds of thousands of minors are athlete members of USA Swimming. Coaches at member clubs must also be members of USA Swimming and are subject to USA Swimming's rules and code of conduct.

USA Swimming has been aware of sexual abuse issues in the sport of swimming for many years. It adopted SafeSport in 2010 as its abuse prevention program. Through SafeSport, USA Swimming requires mandatory background checks and screenings of local swim club coaches and officials. The background checks are initiated by the local clubs but accomplished through USA Swimming's online portal. Coaches and officials must regularly participate in athlete protection training.

USA Swimming provides SafeSport model policies to the local clubs, including some mandatory policies such as abuse prevention and anti-bullying. In 2014, an independent assessment commissioned by USA Swimming reported that although USA Swimming had a voluntary program for education and training of parents and athletes on sexual abuse prevention, few parents (about 1.4 percent) or athletes (about .5 percent) completed the training. The report recommended that USA Swimming make the sexual

abuse prevention education and training mandatory for parents and minor athletes, but USA Swimming did not adopt the recommendation.

Evidence was presented that an abuser typically tries to develop a relationship with the minor, and sometimes a parent, and thus grooms the minor and the parent. The abuser then begins touching the minor inappropriately, stretching boundaries and progressing to more serious abuse, but the minor, or even the parent, does not stop or report the touching because of the relationship with the abuser or for other reasons. There was evidence that although the purpose of the sexual abuse prevention policies and programs is to prevent abuse, they may not prevent all abuse.

B

Stockton Swim Club is a member of USA Swimming. It was a party to these proceedings but settled with Doe before trial. Shunichi Fujishima was a coach at Stockton Swim Club, and Doe was an athlete in the club. She was born in 2005.

Fujishima favored Doe in practices and began giving her hugs and full-body massages at practices and swim meets. This took place in front of other coaches and athletes. Fujishima also connected with Doe over SnapChat, including on topics unrelated to swimming.

At a swim meet in Japan in 2018, Fujishima pressed Doe against a wall, kissed her, and tried to put his hand inside the bottom and top of her swimsuit. He touched her vagina. Before going to Japan, Fujishima kissed Doe at the pool while no one else was there.

Also in 2018, Doe's mother allowed Fujishima to move into the home of Doe and her mother. Fujishima and Doe, who was 12 and 13 years old during that time, had sexual intercourse many times for about eight months. That summer, with her mother's permission, Doe went with Fujishima to the Junior Olympics in San Jose and stayed at a hotel with Fujishima and his brothers. Fujishima was arrested in January 2019.

4

Doe's mother testified she and Doe would have taken SafeSport training if she had known about it. But one of Doe's experts testified he did not know of any youth-serving sports organization in the United States that mandates training for parents about the risk of sexual abuse.

Doe's trial counsel asked the trial court to give a special instruction that would tell the jury USA Swimming had a duty to take reasonable measures to protect Doe from the risk of sexual abuse, such as training and educating her and her parents about how to avoid the risk. In support of the request, Doe's trial counsel argued USA Swimming had a special relationship and added: "If USA Swimming had trained or provided education materials to [Doe] or her parents, both would have been able to detect and report Fujishima's grooming behavior. Further, if other Stockton Swim Club staff, youth member[s] and parents were trained they would have reported the grooming behavior that was right before their eyes well before any abuse occurred." Doe's trial counsel continued: "[T]he high degree of foreseeability that a child could be abused, coupled with the minimal burden on USA Swimming to educate or train its members with currently existing materials, strongly supports the imposition of a duty here."

Trial counsel for USA Swimming opposed the request for the special jury instruction, arguing that "while it sounds good to require training of parents and children in the area of sexual abuse -- that is not the standard of care in the United States, and it is not required in any youth serving sports organization." Trial counsel for USA Swimming added that the authorities proffered by Doe were inapplicable and insufficient to support her proposition that USA Swimming had a duty to educate and train Doe and her parents.

Following argument at the jury-instruction conference, the trial court took the matter under submission and later issued a ruling declining, without comment, to give the proposed special instruction. Instead, the trial court instructed the jury with CACI No. 401 regarding USA Swimming's duty of care, stating:

5

"Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

"A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

"You must decide how a reasonably careful person would have acted in USA Swimming's situation."

DISCUSSION

I

Doe contends the trial court erred in refusing to instruct the jury using Doe's proposed special instruction on USA Swimming's duty of care. We disagree.

A

"The formulation of the standard of care is a question of law for the court. [Citations.] Once the court has formulated the standard, its application to the facts of the case is a task for the trier of fact if reasonable minds might differ as to whether the defendant's conduct has conformed to the standard. [Citations.] [¶] In most cases, courts have fixed no standard of care for tort liability more precise than that of a reasonably prudent person under like circumstances. [Citations.] 'But the proper conduct of a reasonable person under particular situations may become settled by judicial decision or be prescribed by statute or ordinance.' [Citations.]" (*Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 546-547.)

When a plaintiff alleges negligence based on a defendant's failure to take action to protect the plaintiff from injuries caused by a third party, we apply a two-step process to determine the defendant's duty of care to the plaintiff. "First, the court must determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect. Second, if so, the court must

6

consult the factors described in *Rowland* to determine whether relevant policy considerations counsel limiting that duty." (*Brown II, supra*, 11 Cal.5th at p. 209.)

"A special relationship between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant, while a special relationship between the defendant and the dangerous third party is one that 'entails an ability to control [the third party's] conduct.' [Citation.] Relationships between parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests, are all examples of special relationships that give rise to an affirmative duty to protect. [Citations.] The existence of such a special relationship puts the defendant in a unique position to protect the plaintiff from injury. The law requires the defendant to use this position accordingly. [Citation.]" (*Brown II, supra*, 11 Cal.5th at p. 216.)

In *Brown I*, the court held that USA Taekwondo (USAT), the national governing body for the Olympic sport of taekwondo, had a special relationship with a molesting coach because the coach "was required to register with USAT to coach taekwondo at USAT-sponsored competitions, athletes could only compete in competitions with registered coaches, USAT could (and later did) implement policies and procedures to protect athletes from sexual abuse by their coaches, and USAT could (and later did) bar [the coach] from coaching athletes at taekwondo competitions for his violations of USAT's policies and procedures. USAT was therefore in a unique position to protect taekwondo youth athletes from harm." (*Brown I, supra*, 40 Cal.App.5th at p. 1084.)

There is no substantial difference between the foregoing quoted passage in *Brown I* and the circumstances in this case with respect to the NGB's position to control coaches and protect minor athletes. USA Swimming requires coaches to be registered and take mandatory sexual abuse prevention training, and it can bar coaches who are a threat to minor athletes. In addition, USA Swimming has the SafeSport program, meant to protect minor athletes from sexual abuse. USA Swimming does not argue against a finding of a

7

special relationship. We conclude USA Swimming had a special relationship with the coach and with Doe.

Furthermore, the parties do not argue that the *Rowland* factors identify policy considerations that should limit the duty. USA Swimming had special relationships with the coach and with the minor athlete and there has been no showing that the *Rowland* factors identify policy considerations that should limit the duty to protect the minor athlete.

B

Thus, Doe's proposed special instruction correctly explained that USA Swimming had a duty to take reasonable measures to protect Doe from sexual abuse by USA Swimming coaches. But it also proposed to instruct the jury that examples of reasonable measures included training or educating Doe and her parents about how to avoid such abuse. That portion of the proposed instruction was overly specific.

The formulation of a duty of care does not depend on the specific facts of the case. "An approach that [focuses] the duty inquiry on case-specific facts would tend to 'eliminate the role of the jury in negligence cases, transforming the question of whether a defendant breached the duty of care under the facts of a particular case into a legal issue to be decided by the court . . . .' [Citation.]" (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 773.) Citing *Cabral* and other authorities, Justice Cuéllar, in a concurring opinion in *Brown II*, emphasized that duty must be expressed at a high level of generality because what constitutes reasonable care in a specific case usually involves the question of whether the defendant breached a duty. (*Brown II, supra*, 11 Cal.5th at pp. 228-229 (conc. opn. of Cuéllar, J.), citing *Cabral,* at p. 773.) Justice Cuéllar added that as a policy matter, courts tend to leave questions of breach to the jury. (*Ibid*.)

In this case, Doe's proposed special instruction was not crafted with a high level of generality. Rather, it purported to give specific examples of what USA Swimming

8

should have done, thereby conflating duty and breach of duty. The trial court did not err in rejecting the proposed instruction.

At oral argument, counsel for Doe asserted that even if the proposed instruction was too specific because it referenced the examples of education and training, the trial court was nevertheless familiar with *Brown II* and should have corrected the instruction. But that assertion is contrary to the law in civil cases. The trial court did not have the responsibility to modify Doe's proposed jury instruction.

"Each party in a civil proceeding must request complete and comprehensive instructions on its theory of the case; if a party fails to do so, the court ordinarily has no duty to instruct on its own motion. [Citation.]" (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 674-675.) While a litigant has a right to have the jury properly instructed on its theory of the case, the proffered instructions must accurately state the law and must not overemphasize selective issues or evidence. (*Fierro v. Internat. Harvester Co.* (1982) 127 Cal.App.3d 862, 869.) A trial court may reject an incorrect or misleading jury instruction in a civil case, and the court is not required to rewrite an incorrect or misleading jury instruction. (*Shaw v. Pacific Greyhound Lines* (1958) 50 Cal.2d 153, 158 (*Shaw*).) To successfully claim on appeal that the trial court improperly rejected a proposed instruction, the appellant must show a legally correct and specific instruction was requested. (*Switzer v. State of California* (1969) 269 Cal.App.2d 627, 636.)

Here, Doe would have been justified to propose an instruction that USA Swimming had a duty to take reasonable measures to protect Doe from sexual abuse by USA Swimming coaches. But Doe's proposed instruction went further, seeking to instruct that the duty included such efforts as training or educating Doe and her parents about how to avoid the risk of sexual abuse. Such examples were too specific for the required more general instruction on duty, and the trial court did not have an obligation to correct the proposed instruction. (*Shaw, supra*, 50 Cal.2d at p. 158.)

9

Doe claims the instruction actually given to the jury regarding USA Swimming's duty of care was insufficient, and she objected to that instruction by making a motion for new trial after the verdict was rendered. As noted, the general duty instruction, CACI No. 401, was given in this case. It asked the jury to consider how a reasonable person in USA Swimming's situation would act, but it did not inform the jury that USA Swimming had a duty to take reasonable measures to protect Doe. As we have explained, however, it was Doe's responsibility to propose a complete instruction in this civil case, and thus her challenge to the instruction lacks merit.

II

The trial court also instructed the jury based on CACI No. 413 as follows: "You may consider customs or practices in the community in deciding whether USA Swimming Inc. acted reasonably. Customs and practices do not necessarily determine what a reasonable person would have done in USA Swimming Inc.'s situation. They are only factors for you to consider. Following a custom or practice does not excuse conduct that is unreasonable. You should consider whether the custom or practice itself is reasonable."

On appeal, Doe contends the trial court erred by giving this instruction because NGBs like USA Swimming have a duty to affirmatively protect minor athletes from sexual abuse. As we have explained, we agree that USA Swimming had a duty to take reasonable measures to protect Doe from sexual abuse by USA Swimming coaches, and that the jury should have been so instructed if Doe had requested a proper instruction. However, Doe again seeks to conflate duty and breach of duty. We do not agree with Doe that the jury could not consider customs or practices in the community in determining whether USA Swimming acted reasonably, i.e., whether it breached its duty. Generally, a jury may consider customs and practices in the community when deciding whether the actor used due care, even though such evidence is not conclusive. (*Holt v. Dept. of Food & Agriculture* (1985) 171 Cal.App.3d 427, 435.) It was not error to so

10

instruct the jury, as the jury was asked to determine whether USA Swimming acted with due care.

## DISPOSITION

The judgment is affirmed. USA Swimming is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/S/

MAURO, Acting P. J.

We concur:

/S/

HOCH, J.

/S/

EARL, J.

11